# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
### Case No. 22-11873

ANGEL GUZMAN, et al.,

     Appellants,

v.

ROBINHOOD MARKETS, INC., et al.,

     Appellees.

---

Appeal from the United States District Court
for the Southern District of Florida
Case No. 1:21-md-02989-CMA

---

### APPELLANTS' REPLY BRIEF

---

JOSEPH R. SAVERI
California Bar No. 130064
CHRISTOPHER K.L. YOUNG
California Bar No. 318371
ABRAHAM A. MAGGARD
California Bar No. 339949
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Tel: (415) 500-6800
Fax: (415) 395-9940
Email: jsaveri@saverilawfirm.com
     cyoung@saverilawfirm.com
     amaggard@saverilawfirm.com

FRANK R. SCHIRRIPA
New York Bar No. 4103750
KATHRYN A. HETTLER
New York Bar No. 5126065
HACH ROSE SCHIRRIPA &
CHEVERIE LLP
112 Madison Avenue, 10th Fl.
New York, New York 10016
Tel: (212) 213-8311
Fax: (212) 779-0028
Email: fschirripa@hrsclaw.com
     kh@hrsclaw.com

STEVEN L. BRANNOCK
Florida Bar No. 319651
SAMUEL J. SALARIO, JR.
Florida Bar No. 83460
BRANNOCK HUMPHRIES
& BERMAN
1111 W. Cass Street, Suite 200
Tampa, Florida 33606
Tel: (813) 223-4300
Fax: (813) 262-0604
Email:  sbrannock@bhappeals.com
          ssalario@bhappeals.com

*Counsel for Appellants Angel Guzman,
Burke Minahan, Christopher Miller, and
Terell Sterling*

*Guzman et al. v. Robinhood Markets, Inc.*
Case No. 22-11873

## CERTIFICATE OF INTERESTED PERSONS AND
## APPELLATE RULE 26.1 CERTIFICATION

I certify that, to the best of my knowledge, the following is a complete list of

all persons and entities known to have an interest in the outcome of this appeal.

1.　　Altonaga, Cecilia M. (U.S. District Judge)

2.　　Bartlit Beck LLP

3.　　Brannock Humphries & Berman

4.　　Brannock, Steven L.

5.　　Burck, William A.

6.　　Castellanos Alvarado, María

7.　　Citadel Securities, LLC

8.　　Citadel Securities GP LLC

9.　　Cravath, Swaine & Moore LLP

10.　　Danon, Samuel A.

11.　　Fountain, Peter H.

12.　　Furst, Rachel W.

13.　　Grossman Roth Yaffa Cohen, P.A.

14.　　Guzman, Angel

15.　　Hach Rose Schirripa & Cheverie LLP

16.　　Hettler, Kathryn

*Guzman et al. v. Robinhood Markets, Inc.*
Case No. 22-11873

17.    Hoeflich, Adam L.

18.    Hunton Andrews Kurth LLP

19.    Huynh, Andrew D.

20.    Joseph Saveri Law Firm, LLP

21.    Kercher, Christopher D.

22.    LeBuhn, MacGregor

23.    Maggard, Abraham A.

24.    Miller, Christopher

25.    Minahan, Burke

26.    Mollen, Abby M

27.    Orsini, Kevin J.

28.    O'Sullivan, John F.

29.    Quinn Emanual Urquhart & Sullivan, LLP

30.    Robinhood Financial LLC

31.    Robinhood Markets, Inc. (HOOD)

32.    Robinhood Securities, LLC

33.    Robinson, Dawson

34.    Ryan, Antony L.

35.    Salario, Samuel J.

36.    Saveri, Joseph R.

*Guzman et al. v. Robinhood Markets, Inc.*
Case No. 22-11873

37.   Schirripa, Frank R.

38.   Shaffer, Derek L.

39.   Sterling, Terell

40.   Sukiennik, Brittany L.

41.   Torres, Edwin G. (U.S. Magistrate Judge)

42.   Williams, Steven N.

43.   Young, Christopher K.L.

Appellants certify that they are not a subsidiary or affiliate of a publicly

owned corporation and that they are not aware of any publicly owned corporation,

not a party to the litigation, that has a financial interest in the outcome of this case

or appeal.

JOSEPH R. SAVERI
California Bar No. 130064
CHRISTOPHER K.L. YOUNG
California Bar No. 318371
ABRAHAM A. MAGGARD
California Bar No. 339949
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Tel: (415) 500-6800
Fax: (415) 395-9940
Email: jsaveri@saverilawfirm.com
          cyoung@saverilawfirm.com
          amaggard@saverilawfirm.com

**/s/Steven L. Brannock**
FRANK R. SCHIRRIPA
New York Bar No. 4103750
KATHRYN A. HETTLER
New York Bar No. 5126065
HACH ROSE SCHIRRIPA & CHEVERIE
LLP
112 Madison Avenue, 10th Fl.
New York, New York 10016
Tel:  (212) 213-8311
Fax: (212) 779-0028
Email:  fschirripa@hrsclaw.com
          kh@hrsclaw.com

*Guzman et al. v. Robinhood Markets, Inc.*
Case No. 22-11873

STEVEN L. BRANNOCK
Florida Bar No. 319651
SAMUEL J. SALARIO, JR.
Florida Bar No. 83460
BRANNOCK HUMPHRIES
& BERMAN
1111 W. Cass Street, Suite 200
Tampa, Florida 33606
Tel: (813) 223-4300
Fax: (813) 262-0604
Email: sbrannock@bhappeals.com
        ssalario@bhappeals.com            *Counsel for Appellants Angel Guzman,
                                          Burke Minahan, Christopher Miller, and
                                          Terell Sterling*

# **TABLE OF CONTENTS**

Certificate of Interested Persons ...............................................................C1

Table of Contents ................................................................................. iii

Table of Citations..................................................................................v

Introduction .........................................................................................1

Argument...............................................................................................1

    I.     The district court erred in holding that Plaintiffs do not plausibly
         allege an agreement between Robinhood and Citadel Securities
         to restrict trading. ........................................................................1

         A.     The district court improperly applied a heightened legal
              standard for pleading an antitrust claim.....................................1

         B.     Plaintiffs plausibly allege an agreement between
              Robinhood and Citadel Securities to restrict trading.................5

              1.    Motive to Conspire ...........................................................6

              2.    "We are on board" ...........................................................7

              3.    Interfirm Communications ................................................9

              4.    Pattern of Concealment .................................................10

              5.    Market Structure ...........................................................11

              6.    Market Behavior ...........................................................13

              7.    Pretextual Explanations .................................................13

         C.     Limited discovery does not increase Plaintiffs' burden on
              a motion to dismiss. ...................................................................16

II.    Plaintiffs plausibly allege an unreasonable restraint of trade. ............18

    A.    Plaintiffs Allege Relevant Markets............................................19

    B.    Antitrust Injury..........................................................................20

    C.    Defendants continue to misconstrue Plaintiffs' showing of anticompetitive harm and miscast Plaintiffs' argument as antitrust standing. ....................................................................26

Conclusion ...........................................................................................28

Certificate of Compliance ...................................................................29

Certificate of Service ..........................................................................29

## <u>TABLE OF CITATIONS</u>

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ................................................................2, 15

*Amey, Inc. v. Gulf Abstract & Title, Inc.*,
    758 F.2d 1486 (11th Cir. 1985) ................................. 22, 23, 24, 27

*Anderson News, L.L.C v Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012) ....................................................2, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................... 3, 4, 17

*Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    953 F.3d 707 (11th Cir. 2020) ................................. 14, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................ *passim*

*Blue Shield of Va. v. McCready*,
    457 U.S. 465 (1982)................................................ 21, 23, 24, 27

*Cavlovic v. J. C. Penney Corp., Inc.*,
    No. 2:17-cv-2042-JAR-TJJ, 2018 WL 2926433 (D. Kan. Jun. 7, 2018) ........4

*Constr. Aggregate Transp. Inc. v. Fla. Rock Indus., Inc.*,
    710 F.2d 752 (11th Cir 1983) ............................................. 22, 25

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690 (1962)........................................................5, 6

*Erickson v. Pardus*,
    551 U.S. 89 (2007).........................................................1

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
    720 F.3d 33 (1st Cir. 2013).................................... 4, 10, 16

*Faith Enter. Grp., Inc. v. Alvis Budget Grp. Inc.*,
    No. 1:11-cv-3166-TWT, 2012 WL 1409403 (N.D. Ga. Apr. 20, 2012)........3

*\*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*,
    806 F.3d 162 (3rd Cir. 2015).........................................................................23

*Ill. Brick Co. v. Illinois*,
    431 U.S. 720 (1977)...................................................................................26

*In re Ethylene Propylene Diene Monomer (EPMD) Antitrust Litig.*,
    681 F. Supp. 2d. 141 (D. Conn. 2009) ........................................................10

*In re Madison Williams & Co., LLC*,
    509 B.R. 791 (Bankr. S.D.N.Y. 2014) .......................................................17

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
    626 F.3d 1327 (11th Cir. 2010) ......................................................... 19, 20

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007)...................................................................................21

*Levine v. Cent. Fla.Med. Affiliates, Inc.*,
    72 F.3d 1538 (11th Cir. 1996) ...................................................................25

*\*Loeb Indus., Inc. v. Sumitomo Corp.*,
    306 F.3d 469 (7th Cir. 2002) .....................................................................23

*Maris Distributing Co. v. Anheuser-Busch, Inc.*,
    302 F.3d 1207 (11th Cir. 2002) .................................................................25

*Midwestern Waffles, Inc. v. Waffle House, Inc.*,
    734 F.2d 705 (11th Cir. 1984) ...................................................................21

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984).....................................................................................5

*Newcal Indus., Inc. v. Ikon Office, Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ...................................................................19

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.,
      838 Fed. App'x 231 (9th Cir. 2020) ...........................................................23

Quality Auto Painting Ctr. of Roselle v. State Farm Indem. Co.,
      917 F.3d 1249 (11th Cir. 2019) ..............................................................6, 15

Reiter v. Sonotone Corp.,
      442 U.S. 330 (1979)...................................................................................21

*SD3, LLC v. Black & Decker (U.S.) Inc.,
      801 F.3d 412 (4th Cir. 2015) ......................................................................2

Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.,
      376 F.3d 1065 (11th Cir. 2004) ............................................................ 18, 19

Starr v. Sony BMG Music Ent.,
      592 F.3d 314 (2d Cir. 2010) .......................................................................15

Sunbeam Television Corp v. Nielsen Media Rsch.,
      911 F.3d 1264 (11th Cir. 2013) .................................................................26

Swierkiewicz v. Sorema N.A.,
      534 U.S. 506 (2002)............................................................................. 16, 19

Todd v. Exxon Corp.,
      275 F.3d 191 (2d Cir. 2001) ......................................................................19

U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.,
      7 F.3d 986 (11th Cir. 1993) .......................................................................19

United States v. Socony-Vacuum Oil Co.,
      310 U.S. 150 (1940)....................................................................................8

Warren v. Briggs,
      No. 08-CV-1172, 2010 WL 4569871 (C.D. Ill. Sep. 22, 2010)....................17

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................16

Fed. R. Civ. P. 9 ..................................................................................... 15

Fed. R. Civ. P. 12 ................................................................................... 17

Fed. R. Civ. P. 12(b)(6) ................................................................... *passim*

## INTRODUCTION

The district court misapplied the standard on a Rule 12(b)(6) motion by failing to take Plaintiffs' allegations as true, refusing to consider Plaintiffs' allegations as a whole and in context, and, despite well-pleaded facts to the contrary, accepting Defendants' "alternative explanations" for their unprecedented trading restrictions as more probable than Plaintiffs' claim of an illegal agreement. Defendants repeat the district court's error by arguing that Plaintiffs failed to meet a heightened pleading standard that Rule 12(b)(6) simply does not impose. As explained below, Plaintiffs plausibly plead facts giving rise to a viable antitrust claim including antitrust injury—all that is required at the pleading stage.

## ARGUMENT

### I.    THE DISTRICT COURT ERRED IN HOLDING THAT PLAINTIFFS DO NOT PLAUSIBLY ALLEGE AN AGREEMENT BETWEEN ROBINHOOD AND CITADEL SECURITIES TO RESTRICT TRADING.

#### A.    The district court improperly applied a heightened legal standard for pleading an antitrust claim.

Rule 12(b)(6) simply requires a Section 1 plaintiff to plead enough facts to make out a *plausible* claim that Defendants conspired to restrain trade—i.e., enough facts "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Plaintiffs are not required to demonstrate that their claim is probable. *Id*.; *see also Erickson v. Pardus*,

1

551 U.S. 89, 93 (2007) (a complaint "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (internal quotation marks and citations omitted).

Ignoring that the test is plausibility, not probability, Defendants offered an alternative explanation for their conduct—that Robinhood imposed the trading restrictions to avoid NSCC capital requirements—and invited the district court to declare that explanation more likely. Robinhood Br. at 19; Citadel Br. at 22. The district court took the bait, and relying on a handful of summary judgment cases, improperly weighed the parties' competing claims in Defendants' favor. Doc 470 (the "Order") at 36-37, 41. The weighing of competing inferences by the district court is plain error. *See Anderson News, L.L.C. v Am. Media, Inc.*, 680 F.3d 162, 189-90 (2d Cir. 2012) ("[O]n a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives."). Weighing inferences is not the court's task at the motion to dismiss stage, where the plaintiff is entitled to the benefit of all reasonable inferences. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015) ("*Post-Twombly* appellate courts have often been called upon to correct district courts that mistakenly engaged in this sort of premature weighing exercise in antitrust cases.").

To be sure, courts may consider "obvious alternative explanations" when the facts alleged in the complaint provide no reason to doubt those alternatives. *See Am.*

*Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009); *Twombly*, 550 U.S. at 567). The explanation Defendants induced the district court to accept, however, is anything but obvious. It is contradicted by Plaintiffs' well-pleaded factual allegations the district court was duty-bound to accept as true. *See Faith Enter. Grp., Inc. v. Alvis Budget Grp. Inc.*, No. 1:11-cv-3166-TWT, 2012 WL 1409403, at *3 (N.D. Ga. Apr. 20, 2012) (denying motion to dismiss where "the Complaint sets forth facts that directly contradict the Defendants' 'obvious alternative explanation.'").

Plaintiffs allege facts showing Defendants were highly motivated to conspire to stop the short squeeze and avoid massive losses, Defendants had the opportunity to conspire through their power over the PFOF and No-Fee Brokerage Markets, and Defendants did in fact conspire. Plaintiffs allege particularized facts, including high-level communications among Defendants' top executives such as "[w]e are on board" and their efforts to "coordinate messaging" after they implemented unprecedented and anticompetitive trading restrictions. ¶¶ 230, 258.[1] These specific and detailed allegations make it plausible that discovery will produce evidence of an illegal antitrust agreement.

Defendants argue that there was an "obvious alternative explanation" for their conduct. Defendants' capital-requirements theory is a far cry from the alternative

---

[1] "¶ __" citations are to the Amended Complaint (Doc 451).

explanations that were "obvious" in *Twombly* and *Iqbal*.[2] *See Cavlovic v. J. C. Penney Corp., Inc.*, No. 2:17-cv-2042-JAR-TJJ, 2018 WL 2926433, at *4 (D. Kan. Jun. 7, 2018) ("when a complaint presents a plausible inference of liability, the degree of plausibility only becomes relevant when an obvious alternative explanation *overwhelms any inference that liability might exist*") (emphasis added). Moreover, Defendants ignore that the Amended Complaint alleges facts that specifically contradict Defendants' alternative explanation. At best, Defendants' justification sets forth a second plausible inference for their conduct. ¶¶ 249-54, 358-59. That the district court weighed multiple plausible inferences is precisely the problem: "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 45 (1st Cir. 2013).

---

[2] In *Twombly*, the complaint alleged the existence of an agreement solely on allegations of parallel conduct. The complaint did not "allege that competition as CLECs was potentially any more lucrative than other opportunities being pursued by the ILECs during the same period." 550 U.S. at 568. Moreover, "the complaint [was] replete with indications that any CLEC faced nearly insurmountable barriers to profitability . . . ." *Id.* Likewise, in *Iqbal*, the plaintiff brought claims challenging the discriminatory conditions of his detention, but only alleged that the arrests were "likely lawful and justified by [defendant's] nondiscriminatory intent . . . ." 556 U.S. at 667-68.

**B.      Plaintiffs plausibly allege an agreement between Robinhood and Citadel Securities to restrict trading.**

Antitrust plaintiffs should present "direct or circumstantial evidence that reasonably tends to prove that the [defendant] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). Plaintiffs' well-pleaded allegations make it plausible that Robinhood and Citadel conspired to restrict Plaintiffs and other retail investors from purchasing the Relevant Securities. These allegations include communications between high-level executives of Robinhood and Citadel up to, during, and after the imposition of the trading restrictions, a motive to conspire, patterns of concealment, pretextual explanations, as well as a market structure ripe for collusion and uncharacteristic market behavior indicative as such. *See* ¶¶ 226-46, 262-64, 370-402, 411.

Rather than examining Plaintiffs' evidence holistically, the district court improperly analyzed Plaintiffs' allegations piecemeal, and Defendants seized the opportunity to do the same. *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("[T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.") (citation omitted, alteration in original). Indeed, this Court has explained that antitrust plaintiffs are entitled to "'the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the

slate clean after each scrutiny of each.'" *Quality Auto Painting Ctr. of Roselle v. State Farm Indem. Co.*, 917 F.3d 1249, 1263, n.15 (11th Cir. 2019) (quoting *Cont'l Ore Co.*, 370 U.S. at 690).

### 1.    Motive to Conspire

The Amended Complaint alleges that each Defendant had a compelling economic motive to conspire. Defendants argue that those allegations "rest[ ] on a series of inferences." Robinhood Br. at 32; *see also* Citadel Br. at 33-34. But this argument makes little sense on a motion to dismiss where Plaintiffs are entitled the benefit of all reasonable inferences. *See Twombly*, 550 U.S. at 555. Nor are Plaintiffs' motive allegations speculative: the Amended Complaint squarely alleges that Robinhood's business, and thus its upcoming IPO valuation, was entirely dependent on PFOF revenue from Citadel (Robinhood's largest revenue source)[3] and that Robinhood would collapse should Citadel become "unwilling to continue to receive orders from [Robinhood]" or if Robinhood was "unable to find [a] replacement market maker[ ] in a timely manner."[4] ¶ 81. These inferences are reasonable because, among other reasons, Robinhood confirmed as much in its SEC

---

[3] Citadel was responsible for 43% or over $141 million of Robinhood's PFOF revenue in the first quarter of 2021 alone. ¶ 80.

[4] Despite finding in the securities tranche that Robinhood's belief that Citadel would threaten its PFOF revenue supported an inference of a common motive to conspire, the district court would not credit the same allegation for Plaintiffs. Order at 40; *see also* Doc 503 at 49.

filings, reporting that "[a]ny decrease in our transaction-based revenue from market makers could have an adverse effect on our business, financial condition and results of operations." *Id.* The Amended Complaint also alleges that Citadel faced potentially billions of dollars in liability due to its massive short positions in the Relevant Securities should the short squeeze continue unabated. ¶¶ 133, 394-95. As Defendants each stood to suffer massive losses if the trading restrictions were not imposed, it is hard to imagine clearer evidence of a motive to conspire.

### 2.     "We are on board"

Plaintiffs allege that Robinhood agreed to Citadel's request to collude by responding to undisclosed or clandestine communications three days prior to the trading restrictions, stating "[w]e are on board." ¶¶ 227-30. In further support, Plaintiffs allege specific email communications between high-level executives of Robinhood and Citadel just days prior to Robinhood's unprecedented and highly irregular trading restrictions. Notably, by January 20, 2021, Citadel, through its Head of Execution Services, was reaching out to Robinhood to discuss the plan, asking Robinhood to "just let us know if interested and who the main contact should be." ¶ 227. On January 25, only three days before the restrictions, Robinhood assented to Citadel's proposal by stating "[w]e are on board." ¶¶ 227-30. The meaning is plain. Standing alone, this statement is evidence of agreement and a meeting of the minds. What is more, Citadel and Robinhood immediately took steps to further their

scheme, manifesting their agreement. ¶¶ 231-33. For example, Lucas Moskowitz, Robinhood's deputy general counsel and the "central point of contact" for the scheme arranged for a call for 11 a.m. EST on January 26, leading to a flurry of communications the day prior to the restrictions. ¶¶ 232-33, 235-37, 242-46. These facts further corroborate Defendants' agreement. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 252-53 (1940).

Defendants split hairs as to whether Robinhood's statement of assent is direct or circumstantial evidence of a conspiracy. Robinhood Br. at 25-26; Citadel Br. at 25-27. That is beside the point—whatever evidentiary box one puts it in, the statement on its face is both unambiguous and highly indicative of an illegal agreement, even without considering the context of the secretive communications preceding the statement and the subsequent overt acts.

Notably, Defendants concede this, offering no alternate explanation as to the statement's meaning. Instead, Defendants suggest that it was made during the "normal course of business." Robinhood Br. at 25; Citadel Br. at 27. Whatever that might be, illegal agreements in the ordinary course of business remain illegal. Regardless, determining what the author "really" meant is the purpose of discovery. Plaintiffs' burden is to plead enough facts to plausibly suggest that further discovery would uncover evidence of a conspiracy. *Twombly*, 550 U.S. at 556. Plaintiffs' allegation of a high-level executive stating "[w]e are on board," especially in the

context of the other facts alleged in the Amended Complaint, certainly meets this burden.

### 3.    Interfirm Communications

The Amended Complaint sets forth additional communications between high-level executives of Robinhood and Citadel leading up to the imposition of the trading restrictions.[5] The district court confirmed that these allegations support an inference of a conspiracy. Order at 37. Notwithstanding, Defendants argue that because "Plaintiffs had the benefit of significant discovery" they were required to allege "more specific evidence of communications that could support an agreement." Citadel Br. at 18; Robinhood Br. at 30. Plaintiffs, however, have not had the sort of discovery that would reveal the meaning and context of these statements. Any argument at the pleading stage that these were "ordinary" business communications, when this explanation has not been tested through depositions, document requests, and interrogatories is improper. Such fact-based assertions have no basis in Rule 12(b)(6) or in the cases construing it. Prior discovery is irrelevant—as addressed in Section I(C), *infra*.

The district court also found that, standing alone, Defendants' communications did not "advance Plaintiffs' theory from possible to plausible." Order at 37. It was improper for the district court to analyze these communications

---

[5] *See* ¶¶ 226-46.

in a vacuum. Rather, the district court was required to consider these communications in conjunction with Plaintiffs' other well-pleaded allegations, such as those concerning motive and market conditions. *See Evergreen*, 720 F.3d at 47 ("While each of [plaintiff's] allegations of circumstantial agreement standing alone may not be sufficient to imply agreement, taken together, they provide a sufficient basis to plausibly contextualize the agreement necessary for pleading a § 1 claim.").

### 4.    Pattern of Concealment

The Amended Complaint plausibly alleges that Defendants worked to conceal their agreement to restrict trading in the Relevant Securities. Defendants discount these allegations by relying solely on the fact that they are business partners who "use phones to communicate." Robinhood Br. at 33-34; *see also* Citadel Br. at 35-37. The Amended Complaint specifically alleges that Defendants' communications were, on their face, purposefully vague, that attorneys were copied to invoke privilege, and that Defendants communicated to "coordinate messaging" after the trading restrictions were imposed. *See* ¶¶ 228-33, 257-60. Defendants offer no explanation for these facts. These limited communications are the only communications that Plaintiffs have access to because there has been no formal discovery. These communications are especially probative where, as here, there is evidence that Defendants sought to conceal their communications. *See In re Ethylene Propylene Diene Monomer (EPMD) Antitrust Litig.*, 681 F. Supp. 2d 141, 176 (D.

Conn. 2009) ("Here, the plaintiffs' evidence of the frequent and friendly communications between the defendants and the secrecy of their meetings is sufficient to allow a reasonable jury to infer that the defendants participated in an unlawful price-fixing conspiracy.").

### 5.    Market Structure

Defendants' dominance in the PFOF and No-Fee Brokerage markets further supports the reasonable inference that they conspired to restrict trading. In response, Defendants argue that the "retail brokerage market [ ] is not one with a uniform, undifferentiated product," and assert Plaintiff Minahan's ability to open an account with Fidelity on January 28, 2021, negates Plaintiffs' argument that "customers in the No-Fee Brokerage Market are 'locked in' to their respective brokerages in the short term." Robinhood Br. at 34-35; Citadel Br. at 39-41.

As an initial matter, Defendants' product allegations are nowhere to be found in the Amended Complaint. Defendants are once again inviting the Court to discredit Plaintiffs' allegations and weigh the evidence in their favor. The Amended Complaint alleges Robinhood and Citadel colluded to stabilize and drive down the share prices of the Relevant Securities. ¶ 354. The No-Fee Brokerage Market does not exist without PFOF revenue.[6] ¶¶ 305-17. PFOF provides Robinhood substantial

---

[6] While true that market makers and brokerages operate in different markets (Citadel Br. at 40), this is no bar to private enforcement of the antitrust laws. *See* § II(B), *infra.*

revenue, enabling it to provide brokerage services without a fee. ¶¶ 73-82. Indeed, it is the PFOF market in which Citadel exudes enormous power over Robinhood that made collusion plausible, if not likely. ¶¶ 318-36.

Further, Defendants' argument about whether the no-fee brokerage platforms were uniform misses the point. What is relevant is that these platforms, particularly Robinhood's platform, were extremely popular among investors trading the Relevant Securities. Citadel knew that restricting these investors' ability to purchase the Relevant Securities on Robinhood's platform, even for a short time, would have an immediate and significant impact on the market price of the Relevant Securities. *See* ¶¶ 318-19, 352, 401.

Finally, Plaintiff Minahan's ability to open an account with another brokerage on January 28, 2021, represents the exception rather than the rule, as evidenced by the explicit allegations in the Amended Complaint that the two other Plaintiffs who tried to open accounts with another brokerage on January 28, 2021, were unable to do so. ¶¶ 25, 35, 342. The Amended Complaint alleges with specificity why switching to other platforms was extremely difficult and virtually impossible for Robinhood's customers to purchase the Relevant Securities during the period of the restrictions. ¶¶ 337-46. Defendants do not get to argue alternative factual theories in their motion to dismiss.

### 6. Market Behavior

Defendants argue the purchasing restrictions and the precipitous decline in share prices that resulted, is not indicative of a conspiracy because other brokerages implemented similar restrictions. Citadel Br. at 41-42; Robinhood Br. at 36. Defendants ignore Plaintiffs' allegations that Robinhood's restrictions were broader in scope and duration than those imposed by other brokerages. ¶¶ 366-68. In fact, it was the duration and intensity of Robinhood's restrictions that drove the market, and it is telling that no other no-fee broker followed suit. As the Amended Complaint explains, given Robinhood's market importance, Robinhood's participation was enough to accomplish the goals of the conspiracy. *See* ¶¶ 196, 347-49. The fact that other brokerages imposed limited restrictions does not detract from Plaintiffs' allegations. Plaintiffs allege the particulars of Robinhood's power in the No-Fee Brokerage Market and the outsized effect that its users have on the ability to move stock prices—a fact that Citadel was most acutely aware of given the parties' interdependent relationship. ¶¶ 325, 347-48.

### 7. Pretextual Explanations

The district court asserted that Robinhood implemented the trading restrictions due to capital requirements instituted by the NSCC in the face of market volatility. Order at 29. Notably, Plaintiffs made no such allegations. The district court's explanation also misses the point. *Twombly* asks whether plaintiffs have

alleged facts showing that an agreement is plausible. Here, Plaintiffs have done so. *See* Plaintiffs' Br. at 22-39. The inquiry ends there.

The district court's explanation for Defendants' behavior, as well as Robinhood's ever-changing explanations, run contrary to the other well-pleaded allegations in the Amended Complaint. Market volatility or increasing capital requirements are not plausible explanations for Defendants' conduct in view of the Plaintiff's well-pleaded allegations that Robinhood was able to negotiate down its collateral requirements, which negates any explanation that market volatility justified the restrictions. ¶¶ 183-84. Further, as Plaintiffs allege, Robinhood's internal communications did not attribute the NSCC as the cause of the restrictions. ¶¶ 180-81. These attempted justifications do not explain why, with the injection of billions of dollars of capital, Robinhood continued to impose trading limitations through February 4, 2021, long after any issues regarding volatility, collateral requirements, or liquidity had been resolved. ¶¶ 180-85, 261, 264. By indulging these alternative explanations, the district court failed in its duty to accept Plaintiffs' allegations as true and give Plaintiffs the benefit of all of the reasonable inferences they support. If anything, these alternative explanations posit additional subjects to be explored through discovery.

The cases Defendants cite in support of their alternative explanation are entirely distinguishable. Robinhood Br. at 22. In *Automotive Alignment & Body*

14

*Service, Inc. v. State Farm Mutual Automobile Insurance Co.*, 953 F.3d 707 (11th Cir. 2020), plaintiffs alleged that they were victims of a conspiracy to steer business away based on conclusory "threadbare allegations" of an agreement without any facts suggesting that defendants had in fact met, communicated, or acted together in any fashion. *Id.* at 729 ("Without more information to place these threadbare allegations of lost business in context, we would have to engage in impermissible speculation to conclude that concerted steering plausibly caused the decrease in business."). Likewise, in *Quality Auto Painting Center of Roselle*, plaintiffs alleged an illegal agreement without any allegations defendants there acted jointly. 917 F.3d at 1266 ("there is nothing in these allegations to suggest that the Insurance Companies' tactics are uniform or that they use a script").[7]

None of this is true here. On the contrary, the Amended Complaint alleges specific facts including the who, what, when, and why of the agreement, which are sufficient under any measure. *See Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 325 (2d Cir. 2010) (*Twombly* does not require plaintiffs "to mention a specific time, place or person involved in each conspiracy allegation"). Plaintiffs allege the date of the agreement, its participants, the purpose of the agreement, and its consequences. ¶¶ 13-14. Plaintiffs further allege specific acts and statements by Defendants that are

---

[7] Defendants' reliance on cases applying the heightened pleading standard applicable under Rule 9 in fraud cases should be rejected. *See, e.g.*, *Am. Dental Ass'n*, 605 F.3d at 1290 (applying Rule 9(b) pleading standards for RICO claims).

15

highly corroborative of a conspiracy. These allegations demonstrate why Defendants' proffered alternatives do not explain their conduct and cannot be obvious. Plaintiffs' Br. at 8-9. And, as explained above, when two plausible inferences exist,[8] resolution is left for the factfinder, not the court. *See*, *e.g.*, *Evergreen*, 720 F.3d at 45; *Anderson News*, 680 F.3d at 184.

### C. Limited discovery does not increase Plaintiffs' burden on a motion to dismiss.

Defendants' repeated refrain that Plaintiffs were provided some discovery materials is misdirection. To begin with, Defendants overstate what Plaintiffs have received. Plaintiffs have not been provided with initial disclosures, nor were they permitted to propound discovery requests or interrogatories, or take any depositions. The only materials Plaintiffs were provided were documents produced to Congress and certain government entities, proceedings to which Plaintiffs were not parties and in which they had no involvement. *See* Doc 323, ¶ 6.

More important, the fact that some discovery occurred does not increase Plaintiffs' burden on a motion to dismiss. The only question here is whether Plaintiffs plead a plausible conspiracy that satisfies Rule 8. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (no heightened pleading standard under Rule

---

[8] Curiously, while Defendants protest that the trading restrictions may be explained away by "obvious alternative explanations," they tellingly offer no alternative explanation for Robinhood's statement that it was "on board." On this key fact, Defendants do little to undermine the plausibility of Plaintiffs' claim.

8). Indeed, Defendants have it exactly backwards. All that is required to survive a motion to dismiss at the pleading stage are allegations of facts sufficient to show that *further discovery* would be reasonably expected to produce evidence of plaintiff's claims—exactly what Plaintiffs have shown. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. Whether a plaintiff has had the benefit of ample discovery—or had none at all—makes no difference under Rule 12. *See*, *e.g.*, *Warren v. Briggs*, No. 08-CV-1172, 2010 WL 4569871, at *3 (C.D. Ill. Sep. 22, 2010) ("The fact that Plaintiff has had an opportunity to conduct discovery should not change the analysis [at the motion to dismiss stage]."); *see also*, *e.g.*, *In re Madison Williams & Co., LLC*, 509 B.R. 791, 801 (Bankr. S.D.N.Y. 2014) ("Failing to plead additional facts following pre-action discovery that would not otherwise be required to sustain the complaint is not a basis to grant a motion to dismiss."). Tellingly, Defendants have not cited any authority to the contrary.

The documents Plaintiffs have received only reinforce the allegations that a conspiracy is plausible and warrant further exploration through discovery. Indeed, the alleged facts ineluctably lead to the conclusion that additional discovery will provide additional details of the conspiracy. *Twombly*, 550 U.S. at 556. One can infer alone from Robinhood's statement "[w]e are on board" that there was an agreement, understanding, or some commitment to a common course of conduct between Robinhood and Citadel. ¶ 230. Defendants do not—and cannot—come up with

another explanation. Defendants also concede that discovery will shed light on their conduct by acknowledging that "the substance of the communications is undisclosed." Robinhood Br. at 4 (quoting Doc 495, at 9-10); *see also* Citadel Br. at 22. The nature and scope of this indication of assent identifies an appropriate subject of discovery. ¶¶ 227-30.

Other well-pleaded facts lead to the same conclusion. *See*, *e.g.*, ¶ 264 (Robinhood's Swartwout selling his stock in advance of restriction); ¶¶ 321-22 (Robinhood executives discussing how Citadel was going to make demands on PFOF); ¶¶ 176, 181, 192, 194, 261, 264 (Robinhood's internal communications were inconsistent with public explanations for the restrictions). These facts each warrant further exploration through discovery.

## II.    PLAINTIFFS PLAUSIBLY ALLEGE AN UNREASONABLE RESTRAINT OF TRADE.

Defendants argue that Plaintiffs have failed to plead the "anticompetitive effect of the defendant's conduct on the relevant market." Robinhood Br. at 40 (citing *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1071 (11th Cir. 2004)); Citadel Br. at 44. Instead, they claim Plaintiffs' injury occurred in a separate market for securities trading, which they assert cannot be a relevant market for antitrust purposes.

18

### A.    Plaintiffs Allege Relevant Markets

Under *Twombly*, the pleading requirements with respect to market definition is low. A plaintiff must simply allege enough information to "plausibly suggest the contours of the relevant geographic and product markets." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010) (citations omitted). Plaintiffs have done so here. The low pleading burden reflects the factual nature of the inquiry—it requires a fact-intensive analysis unsuitable for resolution on a Rule 12(b)(6) motion. *See Spanish Broad.*, 376 F.3d at 1070 ("Rule 12(b)(6) dismissals are particularly disfavored in fact-intensive antitrust cases."); *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) ("Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market."); *see also Swierkiewicz*, 534 U.S. at 513; *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (no requirement that the market definition elements of an antitrust claim be pled with specificity).

Even so, Plaintiffs specifically allege facts showing the upstream PFOF Market in which Citadel operates, and the downstream No-Fee Brokerage Market in which Robinhood and Plaintiffs participate. ¶¶ 305-15; *see also U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995 (11th Cir. 1993) (relevant product market can exist as distinct subset of larger product market, the boundaries of which may be determined by product's characteristics and distinct customers). Further,

19

Plaintiffs have no choice, and are required by law to purchase and sell securities through those brokerages in that market. ¶ 102; *see Jacobs*, 626 F.3d at 1337 (relevant product market may be composed of products that are reasonably interchangeable).

Defendants claim that Plaintiffs fail to allege the relevant market where the harm occurred, but that is incorrect. Plaintiffs also plead facts showing the target of the restraint—and therefore the foreseeable harm was the restriction of trading and financial loss to retail investors. Plaintiffs allege that Robinhood users were locked into their accounts, and unable to substitute the app for other offerings including large brokerage firms that charge a transaction fee per trade and required hefty account minimums. ¶¶ 102, 314. These facts demonstrate that the restraint in the brokerage market was precisely what Defendants intended through their conduct.

## B.    Antitrust Injury

Plaintiffs plausibly allege their injury resulted from the restriction of trading in the downstream market. When Citadel threatened to withhold its crucial PFOF in the upstream market unless Robinhood restricted trading in the downstream brokerage market, the foreseeable—and intended—result of the scheme was to restrict access to the brokerage market in which Plaintiffs participate. ¶ 197. Plaintiffs further allege that Robinhood's customers had nowhere else to turn in the critical time period when the anticompetitive restrictions were imposed because

20

retail investors cannot quickly change from one no-fee broker to another. Thus, when Plaintiffs were denied the ability to purchase the Relevant Securities on Robinhood's platform, they were prevented from trading in that market. ¶¶ 158-59, 337-46. Defendants do not—and cannot—deny the specificity of these allegations. Defendants instead argue that exclusion from the trading market is not an antitrust injury. According to Defendants, there is no injury in the downstream market absent allegations that the conspiracy successfully targeted Robinhood's competitors in the No-Fee Brokerage Market.

This hypothetical argument is off base. Defendants overlook that the antitrust laws exist to protect consumers, not competitors. *Blue Shield of Va. v. McCready*, 457 U.S. 465, 472 (1982) ("*McCready*"); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 343 (1979) (Congress designed the Sherman Act as a "consumer welfare prescription"); *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 721 (11th Cir. 1984) ("the antitrust laws are designed to protect the consumer interest in competition"). Injury to market competitors in a relevant market is not a *sine qua non* of a Section 1 claim. Instead, it is merely a proxy to determine whether the Defendants' anticompetitive conduct harms the competitive process and thus is of a type that could injure consumers. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (the rule of reason is designed to root out restraints that have anticompetitive effects that are "harmful to the consumer"). Defendants

21

concede as much. *See* Robinhood Br. at 44 (the real question is whether "the challenged restraint [the exclusion from the market] has a substantial anticompetitive effect that harms consumers in the relevant market"). That is exactly what the Amended Complaint alleges.

Under *McCready*, consumers can pursue antirust claims resulting from injuries they sustained as a foreseeable or intended result of defendants' conduct in an intertwined market. This Court has repeatedly confirmed this. For example, in *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1498-99 (11th Cir. 1985), this Court held that "Amey is not a participant in the bank-law firm title services market. It is beyond question, however, that the injury to Amey, payment of an allegedly fixed and inflated price for title search legal services, was both a 'foreseeable' and 'necessary' step in furthering the objective of the conspiracy" (emphasis in original). Similarly, in *Construction Aggregate Transport Inc. v. Florida Rock Industries, Inc*., 710 F.2d 752, 764-65 (11th Cir 1983), this Court found harm in the construction aggregate hauling industry when defendant "clearly has an economic interest in two separate markets . . . ." and that the defendant "must have foreseen that the direct effect of such a restraint would be to eliminate an innovative competitor from the field of aggregate hauling," where the plaintiff operated.

This Court's sister circuits agree that the ability to find harm in an interlinked market is well established. *See*, *e.g.*, *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc*., 838 Fed. App'x 231, 235-36 (9th Cir. 2020) ("The parties do not dispute that NorthBay was neither a consumer nor a competitor in the Solano County healthcare-insurance market, but NorthBay nonetheless falls within *McCready*'s holding because its injuries are 'inextricably intertwined' with an injury to Western."); *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 173-74 (3rd Cir. 2015) ("Because Hanover Realty alleges that its harm was the essential component of Defendants' anticompetitive scheme as opposed to an ancillary byproduct of it, we conclude that Hanover Realty has sufficiently pleaded antitrust injury under *McCready*."); *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 481-84 (7th Cir. 2002). For good reason: this has long been settled antitrust law.[9]

---

[9] As this Court noted in *Amey,*

> In [*McCready*], the health plan argued that the relevant market for standing purposes was the market in group health care plans, and as such, standing was "limited to participants in that market . . . entities such as McCready's employer, who were purchasers of group health plans, but not to McCready as a beneficiary of the Blue Shield plan." [*McCready*], 457 U.S. at 479-80. While the Supreme Court acknowledged that McCready was not in the area of the market taken up by the group health care plans, the Court held that McCready was in a market in which she was a "consumer of psychotherapy services entitled to financial benefits under the Blue Shield plan."

758 F.2d at 1499 (quoting *McCready*, 457 U.S. at 480).

23

The alleged facts are on all fours with those in *Amey* and the other precedents cited above. While Plaintiffs do not participate in the PFOF market, they are consumers in the No-Fee Brokerage Market—precisely the market that the conspiracy targeted. Moreover, they are able to receive those no-fee brokerage services directly as a result of the intertwined PFOF market. *See Amey*, 758 F.2d at 1498-99 ("McCready was in a market in which she was a 'consumer of psychotherapy services entitled to financial benefits under the Blue Shield plan.'") (quoting *McCready*, 457 U.S. at 479-80). Citadel's PFOF arrangement with Robinhood provides the revenue—and economic mechanism—for Robinhood to offer no-fee brokerage services. ¶¶ 73-82. Limited by law to participate in securities trading through brokerages like Robinhood, a retail investor cannot walk into a stock exchange and purchase securities. ¶ 102. They must do so through a brokerage. *Id*. Further, as alleged, retail investors cannot easily and rapidly switch brokerages, so they are effectively locked-in in the short run. ¶¶ 337-40. Plaintiffs also plead facts showing that inflicting harm on consumers, by restricting or eliminating their ability to trade the Relevant Securities, was the foreseeable and intended harm. *See McCready*, 457 U.S. at 479-81 (The harm was a "necessary step in effecting the ends of the alleged illegal conspiracy" and McCready was within the market threatened by the anti-competitive conduct); *Amey*, 758 F.2d at 1499 ("It is beyond question, however, that the injury to Amey, payment of an allegedly fixed and inflated price

24

for title search legal services, was both a 'foreseeable' and 'necessary' step in furthering the objective of the conspiracy."); *see also Const. Aggregate Transp.*, 710 F.2d at 764-65 ("Even if FRI's conduct was aimed most directly at restraining competition for the production of aggregate, FRI must have foreseen that the direct effect of such a restraint would be to eliminate an innovative competitor from the field of aggregate hauling….").

Here, Defendants' market power enabled them to distort the market and protect their economic interests at the expense of Plaintiffs. The antitrust injury would be the same regardless of whether the exclusion resulted from a conspiracy of multiple competitors in the No-Fee Brokerage Market (which Defendants concede would state a claim, *see*, *e.g.*, Citadel Br. at 39; Robinhood Br. at 44), or the market power of a single dominant market participant, which is what Plaintiffs allege.

Defendants' own cases illustrate this focus on the connection between market power and consumer injury. In *Maris Distributing Co. v. Anheuser-Busch, Inc*., 302 F.3d 1207, 1213 (11th Cir. 2002), this Court determined that there was no antitrust injury because the defendant had no market power and, as a result, consumers could simply go elsewhere. In other words, what was relevant was not market definition but rather the fact that defendants had no power in that market to injure the consumer. *See id*. at 1222. Similarly, in *Levine v. Central Florida Medical Affiliates, Inc*., 72 F.3d 1538, 1553 (11th Cir. 1996), plaintiffs could not show injury because

defendants had no market power and consumers were free to choose competitive alternatives.

### C.  Defendants continue to misconstrue Plaintiffs' showing of anticompetitive harm and miscast Plaintiffs' argument as antitrust standing.

The district court's order is murky as to whether its holding was premised on purported deficiencies regarding antitrust standing or market definition. Instead, it found that there was a "curious gap" between the relevant market and the alleged injury. Order at 48, 51. Defendants make little attempt to defend or explain the district court's erroneous determination that there was a "gap" or what this characterization explains. Whether the district court's analysis sounds in antitrust standing or in a relevant market analysis, however, makes little difference. Plaintiffs have satisfied both.

Plaintiffs sufficiently plead the necessary antitrust standing. Standing focuses in relevant part on the nature of the injury and its relationship to the antitrust misconduct—precisely what is being argued here.[10] Plaintiffs' theory of anticompetitive harm is not novel. As shown above, it is well established that

---

[10] There are two aspects to antitrust standing. *See Sunbeam Television Corp v. Nielsen Media Rsch.*, 911 F.3d 1264, 1271 (11th Cir. 2013). One is whether the plaintiff is an efficient enforcer of the antitrust laws. This prong of standing explores, for example, whether direct or indirect purchasers are best suited to sue for a particular injury. *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 732 (1977). This "efficient enforcer" prong is not at issue. This case concerns the other prong; that is, the nature of the injury and the connection of the injury to the misconduct.

antitrust law provides—and economics recognizes—that one can be harmed in one market by a restraint in another, intertwined or interlinked market. *See*, *e.g.*, *McCready*, 457 U.S. 465 (finding harm in costs of services due to conspiracy in insurance markets); *see also* § II(B), *supra*. The facts Plaintiffs allege describe the injury and the relationship to the restriction on trading.

As a matter of antitrust law, "[a]ll that is required is that the plaintiff be in the sector of the economy which is the target of the antitrust violation" or a "foreseeable victim of the anti-competitive conduct." *Amey*, 758 F.2d at 1494 (citations omitted). An injury is foreseeable "[w]here the injury alleged is so integral an aspect of the conspiracy alleged, there can be no question but that the loss was precisely "the type of loss that the claimed violations . . . would be likely to cause." *McCready*, 457 U.S. at 480 (citations omitted). Plaintiffs allege that their injuries were foreseeable, and indeed, they were the intended target of Defendants' conduct.

With respect to market definition, as explained in Section II(A), *supra*, Plaintiffs allege facts showing the PFOF Market and the No-Fee Brokerage Market, their relationship, and how Defendants' conduct was intended to—and did in fact— cause harm to Plaintiffs who participate in the No-Fee Brokerage Market. *See* § II(B), *supra*; Plaintiffs' Br., § II(A). The purpose of that scheme was to save Citadel from its precarious short position, and the target of that scheme was the consumers who were profiting from rising prices at Citadel's expense.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' opening brief, the judgement of the district court should be reversed.

JOSEPH R. SAVERI
California Bar No. 130064
CHRISTOPHER K.L. YOUNG
California Bar No. 318371
ABRAHAM A. MAGGARD
California Bar No. 339949
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Tel: (415) 500-6800
Fax: (415) 395-9940
Email: jsaveri@saverilawfirm.com
     cyoung@saverilawfirm.com
     amaggard@saverilawfirm.com

STEVEN L. BRANNOCK
Florida Bar No. 319651
SAMUEL J. SALARIO, JR.
Florida Bar No. 83460
BRANNOCK HUMPHRIES
  & BERMAN
1111 W. Cass Street, Suite 200
Tampa, Florida 33606
Tel: (813) 223-4300
Fax: (813) 262-0604
Email: sbrannock@bhappeals.com
     ssalario@bhappeals.com

**/s/Steven L. Brannock**
FRANK R. SCHIRRIPA
New York Bar No. 4103750
KATHRYN A. HETTLER
New York Bar No. 5126065
HACH ROSE SCHIRRIPA &
CHEVERIE LLP
112 Madison Avenue, 10th Fl.
New York, New York 10016
Tel:  (212) 213-8311
Fax: (212) 779-0028
Email:  fschirripa@hrsclaw.com
     kh@hrsclaw.com

*Counsel for Appellants Angel Guzman, Burke Minahan, Christopher Miller, and Terell Sterling*

## <u>CERTIFICATE OF COMPLIANCE</u>

**Type-Volume**: This brief complies with the type-volume limits of FRAP 32(a)(7)(B)(i) because, excluding the parts of the brief exempted by FRAP 32(f) and 11th Cir. Rule 32-4, this document contains 6,394 words.

**Typeface and Type-Style**: This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

<u>**/s/Steven L. Brannock**</u>
STEVEN L. BRANNOCK
Florida Bar No. 319651

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on February 3, 2023, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served on counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

<u>**/s/Steven L. Brannock**</u>
STEVEN L. BRANNOCK
Florida Bar No. 319651